UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

FREDERICK LAMAR DIXON,

        Plaintiff,

v.

MICHIGAN PAROLE BOARD et al.,

        Defendants.
_____/

Case No. 1:24-cv-610

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.[1] Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2). However, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not

---

[1] After the filing of this complaint, Plaintiff was released on parole and is no longer incarcerated by the State of Michigan. *See* MDOC Offender Tracking Information System https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=158463 (last visited on August 28, 2024). It appears that Plaintiff pleaded guilty to two counts of conspiracy to possess with intent to distribute methamphetamine and a mixture or substance containing a detectable amount of cocaine in the United States District Court for the Eastern District of Michigan on July 16, 2024. *See United States v. Dixon et al.*, Case No. 5:21-cr-20566, ECF No. 125, PageID.820-836 (E.D. Mich.). On August 15, 2024, a Stipulation and Order were entered adjourning the presentence report interview date and sentencing because Plaintiff is not currently in federal custody. *Id.*; ECF No. 132, PageID.849.

paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[2] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

## **Discussion**

The PLRA amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon

---

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

2

which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff, who has numerous known aliases including Antar Bantu[3], has been an active litigant in the Michigan federal courts. Plaintiff has filed a number of cases in the Eastern District of Michigan under the alias Antar Bantu, as well as under the name Frederick Dixon. In at least three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Bantu v. Elo et al.*, No. 2:88-cv-71145, ECF No. 14, PageID.2-6 (E.D. Mich. Sep. 30, 1988); *Bantu v. Zavislak et al.*, No. 2:94-cv-70340, ECF Nos. 29, 30 (E.D. Mich. Feb. 6, 1995); *Dixon v. Minzey et al.*, No. 1:07-cv-14204, ECF No. 5 (E.D. Mich. Oct. 29, 2007).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). Plaintiff alleges that he was returned to prison as a parole violator on September 29, 2020. Plaintiff had a revocation hearing and was found guilty of four violations. Plaintiff was sentenced to an eighteen (18) month continuance. (ECF No. 1, PageID.4.) During the continuance, Plaintiff was indicted for federal crimes. At the end of the continuance, Plaintiff was interviewed by a Parole Board member Burns, who told him that he could not be

---

[3]*See* MDOC Offender Tracking Information System https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=158463 (last visited on August 28, 2024).

paroled because of the pending federal indictment. (*Id.*) Plaintiff was given a twelve (12) month continuance and was taken into federal custody where he remained for two (2) years. During his federal custody, Plaintiff was told that he could not be paroled until he was placed back into state custody and his federal charges were resolved. (*Id.*)

Upon Plaintiff's return to state custody, he requested a Parole Board hearing, but did not receive a response. Plaintiff filed a grievance, which was rejected by Defendant Becher. (*Id.*) On April 29, 2024, Plaintiff was interviewed by Parole Board member King, who along with Parole Board member Jennings, gave Plaintiff a twelve (12) month continuance with a projected release date of June 4, 2024. (*Id.*, PageID.4-5.)

On May 3, 2024, Parole Board Chairman Brian Shipman and member Aaron Dungy amended Plaintiff's parole date to August 8, 2024, based on "new information." (*Id.*, PageID.5.) Plaintiff further alleges he did not receive a hearing prior to this amendment and was not told any details regarding the supposed new information. (*Id.*) On May 7, 2024, Plaintiff asked Defendant Becher for a grievance form to grieve the Parole Board, but his request was denied because Defendant Becher found that Plaintiff had not attempted to resolve the issue. (*Id.*) Plaintiff appealed to Defendants Rewerts and Russell, who upheld the rejection. (*Id.*)

Plaintiff states that in early March of 2023, he was transferred to Carson City Correctional Facility, where he told Counselor Stevenson that he was overdue to see the Parole Board, but Stevenson refused to contact the Michigan Parole Board on Plaintiff's behalf. (*Id.*)

On April 1, 2024, Plaintiff submitted a request to Defendant Hitchingham seeking more than four (4) hours per week of law library time. Defendant Hitchingham denied the request and Defendants Becher and Rewerts upheld the denial. (*Id.*) On April 25, 2024, Plaintiff's request for copies of a motion for reconsideration and exhibits was denied by the Law Library Tech Kissell

4

and Defendants Becher and Rewerts upheld the denial. (*Id.*) On April 29, 2024, Plaintiff's request for legal copies was denied by Defendant Hitchingham and Plaintiff's grievance regarding the matter was rejected by Defendants Becher and Rewerts. (*Id.*, PageID.6.) Plaintiff was unable to meet the deadline for filing his Motion for Reconsideration in the Michigan Supreme Court and it was rejected as untimely. (*Id.*) On April 30, 2024, Defendant Becher placed Plaintiff on modified access to the grievance procedure. Since that date, Plaintiff has requested multiple grievance forms, but Defendant Becher has refused to acknowledge Plaintiff's requests. (*Id.*)

Plaintiff states that, on May 4, 2024, Plaintiff went to his law library callout but found the library locked and closed. When Plaintiff asked Defendant Sutten, who was passing out medication, to speak to the Sergeant, Defendant Sutten told him to "get the f*ck on." (*Id.*) Plaintiff alleges that when he returned to his housing unit, non-party Officer Khol conducted a retaliatory search of his property and person. (*Id.*) Defendant Khol told Plaintiff that Defendant Sutten had called ahead and instructed him to search Plaintiff. When Plaintiff asked if it was a retaliatory search, Officer Khol stated "this is what happen[s] when you mouth off." (*Id.*, PageID.7.) Plaintiff reported the incident to non-party Sergeant Richardson, who made it clear that he supported whatever his officer did. (*Id.*)

On May 5, 2024, Plaintiff was told that he was being reviewed on a minor misconduct and Plaintiff declined to participate in the review. (*Id.*) On May 7, 2024, Defendant Fleicher told Plaintiff that he was conducting a misconduct hearing on Plaintiff for lying to staff and being out of place. The misconduct had been written up by Defendant Sutten. (*Id.*) Plaintiff pleaded not guilty and stated that he had never been provided with a copy of the misconduct report so was unable to put on a defense. (*Id.*) Plaintiff alleges that Defendant Fleicher did not conduct a hearing that day, but on May 13, 2024, he arbitrarily found Plaintiff guilty and sentenced him to 15 days

loss of privileges. (*Id.*) Plaintiff filed an appeal, which should have resulted in the stay of sanctions pending the outcome of the appeal. (*Id.*) However, Defendant Fleicher nonetheless started Plaintiff's sanctions. Plaintiff never received a decision on his appeal. (*Id.*) Plaintiff wrote to Defendant Mates informing him of the violations, but Defendant Mates never replied. (*Id.*) In addition to the 15-day loss of privileges, Plaintiff also served a 90 day recreation restriction on the gym and weight pit. (*Id.*)

On May 20, 2024, Defendant Fleicher made arrangements for Plaintiff to be transferred from Housing Unit G to Housing Unit F. Plaintiff alleges that, when Plaintiff arrived in Housing Unit F, Defendant Stoot told Plaintiff that Defendant Fleicher had filled her in and that she was not going to tolerate his "bullshit" on her unit. (*Id.*, PageID.8.) On May 21, 2024, Defendant Stoot conducted a shakedown on the cube shared by Plaintiff and seven other inmates. When Plaintiff returned to his area, he discovered that it had been trashed and his legal documents had been dumped out of their folders and scattered around. (*Id.*) When Plaintiff opened his locker to place his store items back, he found a noose. Plaintiff went to the officer station to address the issue, but Defendant Stoot called him a "dumb N\*\*ger and a f\*\*king moron." (*Id.*) Plaintiff then reported the matter to the unit counselor and to Defendant Rewerts, but Plaintiff's concerns were dismissed. (*Id.*) Plaintiff filed a grievance regarding the lack of diversity at the facility, but it was rejected by Defendants Rewerts and Becher. (*Id.*)

None of the allegations in Plaintiff's complaint supports a finding that he was in imminent danger at the time he filed his complaint. Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper

procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma* pauperis. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[4]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:     September 4, 2024                              /s/ Jane M. Beckering
                                                          Jane M. Beckering
                                                          United States District Judge

---

[4] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.